# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER W. DOZIER,** | : | **CIVIL NO. 1:CV-12-00838** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| **COMMISSIONER OF THE** | : | |
| **DEPARTMENT OF** | : | |
| **CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Roger W. Dozier, an inmate currently confined at the State Correctional Institution at Smithfield ("SCI-Smithfield") in Huntingdon, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983 with a *pro se* complaint on April 4, 2012.[1]  (Doc. 1-1, 1-2.)  Plaintiff has also asserted pendant state law claims of negligence and medical malpractice.  Named as Defendants are Corizon, Inc., and two medical providers at SCI-Smithfield ("Medical Defendants"), as well as a number of Department of Corrections ("DOC") employees located at SCI-Smithfield ("DOC Defendants").[2]  In the complaint, Plaintiff alleges that all

---

[1] Plaintiff originally filed his complaint in the Court of Common Pleas of Huntingdon County, Pennsylvania.  (*See* Doc. 1.)  The complaint was removed to this court through a Notice of Removal filed on May 4, 2012.  (*See id*.)

[2] The Medical Defendants are as follows: Corizon, Inc., and two employees, Dr. Doll and Dr. Agora.  The DOC Defendants are as follows: Department of Corrections, Commissioner of

Defendants were deliberately indifferent to his serious medical needs both before and after he fell from his top bunk on January 1, 2012. As relief, he seeks compensatory damages.

Before the court is a motion to dismiss filed by the Medical Defendants. (Doc. 5.) For the reasons set forth below, the motion will be granted.

## I. __Background__

### A. __Facts__

In the complaint, Plaintiff provides the following factual background with respect to his claims. For purposes of disposition of the instant motion to dismiss, the factual allegations asserted in the complaint will be accepted as true and viewed in a light most favorable to Plaintiff.

In his complaint, Plaintiff alleges that when he arrived at SCI-Smithfield in June or July 2009, he notified a doctor that he required chronic care because he had been in an automobile accident and injured his right shoulder and back, and has been on pain management since the accident. (Doc. 1-1 ¶ 12.) When the doctor asked him why he was assigned to bottom bunk status, Plaintiff responded that he had been shot

the Department of Corrections; John Fisher, Warden; R. Sue Hannah, Deputy Warden; and, William Driebelbis, Health Care Administrator.

in the knee and had a "blown out bicep." (*Id*.)  He also explained that he was on a

medical restriction of "no pushing, no pulling, no standing for long periods of time,

no bending for long periods of time." (*Id*.)  The doctor then told Plaintiff that he

would remain on bottom bunk status.  (*Id*.)

At some point after this initial screening with the doctor, Plaintiff was placed in

the "SMU Segregated Medical Unit," ("SMU") in order to have access to an electrical

outlet for his "C-Pap breathing machine." (*Id*.)  After forty-five days in the SMU,

Plaintiff was transferred to the "A.C. Administrative Custody Side" of the Restricted

Housing Unit ("RHU") "under disciplinary sanctions." (*Id*.)  Once in the RHU,

Plaintiff was assigned a top bunk.  (*Id*. ¶ 13.)  He did not know who rescinded his

bottom bunk status or why the action was taken.  (*Id*. ¶¶ 14, 15.)  Plaintiff then made

an inquiry to Dr. Doll, his chronic care doctor, about why he was assigned to the top

bunk and requested more pain medication.  (*Id*. ¶ 18.)  He alleges that Dr. Doll did not

respond because she was not working due to the holiday season.  (*Id*. ¶ 19.)

However, Plaintiff also submitted a sick call slip to a physician's assistant ("PA") for

more pain medication.  (*Id*. ¶¶ 20, 21.)  The PA responded that he would place

Plaintiff on the call list to see the doctor.  (*Id*. ¶ 21.)

Thereafter, Plaintiff was examined by Dr. Agora, the doctor attending to the

RHU.  (*Id*. ¶ 22.)  Dr. Agora informed Plaintiff that there was nothing wrong with him

that would preclude the use of the top bunk. (*Id*.) Plaintiff continued to complain of pain in his lower back and bicep. (*Id*.) In response, Dr. Agora reordered Plaintiff's pain medication. (*Id*. ¶ 23.) When Plaintiff informed Dr. Agora that the pain medication was not helping him manage the pain, Dr. Agora told him that there was nothing wrong with him and escorted Plaintiff back to his cell. (*Id*. ¶¶ 24, 25.)

On December 27, 2011, Plaintiff submitted a request slip to Dr. Doll complaining of his top bunk status. (*Id*. ¶¶ 26, 27; Doc. 1-1 at 11, Inmate's Request to Staff Member.) In her response dated December 28, 2011, Dr. Doll wrote: "Taking elavil does not automatically give you bottom bunk status. I also notice that you have no sports restrictions. Bottom bunk status requires sports restrictions also. If you think that you qualify for this, you should sign up for sick call." (Doc. 1-1 at 11.) In his complaint, Plaintiff alleges that he "doesn't have five dollars to pay out [presumably for a sick call visit] to get the same answers to the same questions." (Doc. 1-1 ¶ 28.) To that end, Plaintiff does not allege that he followed Dr. Doll's directive to sign up for sick call.

On December 29, 2011, Plaintiff submitted a request slip to Dr. Agora, asking why his bottom bunk status had been rescinded and why his pain medication was reordered if there is nothing wrong with him. (*Id*. ¶ 29, 30; Doc. 1-1 at 12, Inmate's Request to Staff Member.) In his December 30, 2011 response, Dr. Agora told

Plaintiff to sign up for sick call. (Doc. 1-1 at 12.) Plaintiff does not allege that he followed Dr. Agora's directive.

On January 1, 2012, Plaintiff fell off the top bunk in his RHU cell, injuring his neck, lower back and right shoulder. (Doc. 1-1 ¶ 32.) A correctional officer found Plaintiff and called for a nurse. (*Id*. ¶¶ 34-37.) The nurse did an initial assessment at the cell, and then Plaintiff was taken to the medical department for further examination. (*Id*. ¶¶ 35-38.) There were no doctors in the department at the time, only two nurses. (*Id*. ¶¶ 40, 42.) Plaintiff was lifted into a wheelchair and placed in an observation cell. (*Id*. ¶ 42.) He was prescribed Motrin and evaluated in the observation cell for two days. (*Id*. ¶¶ 44, 45.) When he was released from the observation cell and returned to his cell in the RHU, Plaintiff had not been seen by Dr. Doll or Dr. Agora, nor was he taken to an outside hospital. (*Id*. ¶¶ 46-48.) Further, he was still assigned to the top bunk. (*Id*. ¶ 49.) Plaintiff alleges that he was still in "intolerable pain," and was not receiving additional medication to manage the pain. (*Id*.) He submitted a sick call slip to the PA, but did not received any change in his medication or in his bunk status. (*Id*. ¶ 52.)

### B. Procedural History

On May 4, 2012, Medical Defendants filed a notice of removal, informing the court of removal of Plaintiff's complaint from the Court of Common Pleas of

Huntingdon County to this court.  (Doc. 1.)  Thereafter, Medical Defendants filed a motion to dismiss on May 21, 2012.  (Doc. 5.)  On June 7, 2012, the court directed Plaintiff to file a brief in opposition to the motion to dismiss on or before June 21, 2012.  (Doc. 9.)  Plaintiff filed his opposition on June 20, 2012, which was accepted by the court on August 10, 2012.  (*See* Doc. 12.)  Thus, the instant motion to dismiss is ripe for disposition.  The remaining Defendants have not answered the complaint.

## II.    Standard of Review

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in the context of Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).  "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Id*.  A plaintiff must provide more than

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *accord*, *e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

8

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted) (emphasis added).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the

grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.  <u>Discussion</u>

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[3] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is

---

[3] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

10

well-settled that certain government officials possess immunity from § 1983 liability. *Id*.

In the instant motion to dismiss, Medical Defendants contend that (1) Corizon Health, Inc. cannot be held liable under the Eighth Amendment based upon the theory of *respondeat superior* and therefore should be dismissed as a party, (2) Plaintiff has not alleged viable claims of deliberate indifference to a serious medical need against Defendants Dr. Doll and Dr. Agora, and (3) the state law claims should be dismissed. The court will address these arguments in turn.

### A. Defendant Corizon Health, Inc.

In the complaint, Plaintiff names Corizon Health, Inc. as a Medical Defendant. Corizon, the entity that provides medical professionals to SCI-Smithfield, seeks dismissal based on Plaintiff's failure to state a federal claim. Upon review, the court will grant the motion to dismiss as to Defendant Corizon and dismiss it as a party.

A private health care provider acting under color of state law, such as Corizon, can be held liable under § 1983 for Eighth Amendment violations stemming from inadequate medical treatment of prisoners. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Thomas v. Zinkel*, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001). Such liability cannot rest on *respondeat superior* alone, but instead must be based on some policy, practice, or custom within the institution that caused the injury. *See*

*Thomas*, 155 F. Supp. 2d at 412.  Moreover, mere identification of a policy or custom is not enough to establish liability; a plaintiff also must establish causation.  In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the health care provider's custom or policy and the constitutional deprivation at issue.  *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).  As such, there is no liability for the alleged misconduct of employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability would be predicated upon the doctrine of *respondeat superior*.  *Monell*, 436 U.S. at 691.

For the purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict.  *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Unterberg v. Corr. Med. Sys., Inc.*, 799 F. Supp. 490, 497-98 (E.D. Pa. 1992).  A custom, on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Bielevicz*, 915 F.2d at 850.  As a result, custom can be established by "proof of knowledge and acquiescence."  *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989); *Unterberg*, 799 F. Supp. at 498.  Under the *Estelle* deliberate indifference test, deliberate indifference can be shown in

12

the instant case, for example, if there is an established policy or custom that caused Corizon to intentionally deny or delay access to necessary medical treatment for non-medical reasons, or if officials intentionally interfered with a course of treatment once prescribed. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Here, Plaintiff has not alleged the existence of any policy or custom attributable to Corizon with respect to his medical care that deprived him of his federal constitutional rights. In the complaint, he asserts, "Corizon Health, Inc, a.k.a. Prison Health Services, is contracted by the DOC to conduct medical services and are legally responsible for the health, correct diagnoses, proper medical treatment for all inmates in there [sic] charge." (Doc. 1-1 ¶ 8.) In addition, he generally asserts, "Corizon Health, Inc. a.k.a. Prison Health Services has deliberate indifference [sic] to the Plaintiff's health, safety, and welfare, as well as violating the Plaintiff's constitutional rights." (*Id*. ¶ 57.) It is clear in reviewing the complaint that Plaintiff seeks to impose liability on Corizon solely as the entity responsible for providing health care to SCI-Smithfield and the employer of those individuals he maintains failed to provide him with adequate medical care. However, as stated, liability cannot rest on *respondeat superior* alone. Accordingly, the court will dismiss the claims against Corizon for failure to state a claim for which relief may be granted. *See*

13

*Riddick v. Modeny*, 250 F. App'x 482, 483-84 (3d Cir. 2007) (affirming district court's granting of private health care provider's motion to dismiss under Rule 12(b)(6), where court found "absent any allegation from which the court could infer Prison Health Services's direct involvement in the alleged deprivation of [Plaintiff's] constitutional rights, it was not liable on a theory of *respondeat superior*.").

### B. Deliberate Indifference Claims

In the instant motion, Medical Defendants argue that Plaintiff has failed to establish that they were deliberately indifferent to his serious medical needs with respect to both his bunk designation and the medical treatment he received before and after his alleged fall from the top bunk in his RHU cell. The court will address these claims in turn.

### 1. Bunk Designation

In his complaint, Plaintiff alleges that Defendants assigned him to a top bunk in violation of the Eighth Amendment. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 542 U.S. 337, 349 (1981)). The Eighth Amendment prohibition against cruel and unusual punishment requires that prison officials provide "humane conditions of confinement" including "adequate food, clothing, shelter and medical care." *Farmer*, 511 U.S. at 832.

14

"[T]o establish an Eighth Amendment violation an inmate must allege both an objective element - that the deprivation was sufficiently serious - and a subjective element - that a prison official acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). To satisfy the subjective component, an inmate must prove that a prison official demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. *Farmer*, 511 U.S. at 836-37. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

In the instant case, first with respect to Dr. Doll, Plaintiff alleges that after he was assigned to a top bunk in the RHU, he made an inquiry to Dr. Doll about why he had been assigned to the top bunk. (Doc. 1-1 ¶ 18.) However, he noted that Dr. Doll was not working at that time due to the holiday season, and he "would have to wait

15

until she returned to work, so that [he] could ask her about the situation." (*Id*. ¶ 19.)

When he sent Dr. Doll another request on December 27, 2011, she responded the next day as follows: "Taking elavil does not automatically give you bottom bunk status. I also notice that you have no sports restrictions. Bottom bunk status requires sports restrictions also. If you think that you qualify for this, you should sign up for sick call." (Doc. 1-1 at 11.) Plaintiff does not allege that he followed Dr. Doll's directive. As to Dr. Agora, Plaintiff alleges that when Dr. Agora evaluated him in the RHU, he concluded that there was nothing wrong with Plaintiff to preclude the use of the top bunk. (Doc. 1-1 ¶ 22.) Further, when Plaintiff submitted a request to Dr. Agora about his bunk status on December 29, 2011, Dr. Agora responded the next day, directing Plaintiff to sign up for sick call. (Doc. 1-1 at 12.) Plaintiff does not allege that he followed Dr. Agora's directive.

Upon review, these allegations in the complaint, as well as the documentation submitted in support thereof, demonstrate that neither Dr. Doll nor Dr. Agora acted with deliberate indifference with respect to Plaintiff's concerns about the change in his bunk status. Rather, Plaintiff's own allegations establish that both Defendants quickly responded to Plaintiff's inquiries about that bunk status with recommendations that he seek medical attention via a sick call request. Plaintiff did not comply with these directives. Further, while Dr. Agora was of the opinion that no

16

restriction was medically necessary, at most the court could find him negligent for failing to see that Plaintiff's condition prior to the fall may have brought with it the need for a bottom bunk assignment. This assumption alone does not establish deliberate indifference. *See Rouse*, 182 F.3d at 197 ("[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference."). In sum, because both Dr. Doll and Dr. Agora addressed Plaintiff's concerns about his bunk status by recommending that he sign up for sick call in order to have his status reevaluated, Plaintiff's allegations do not support a claim that these Defendants acted with deliberate indifference in maintaining Plaintiff's temporary lower bunk status in the RHU.[4] Therefore, Medical Defendants' motion to dismiss will be granted in this regard. Further, since Plaintiff has failed to state a constitutional violation, amendment would be futile. *See Alston*, 363 F.3d at 236.

### 2. Medical Treatment Before and After Alleged Fall from Top Bunk

Also in his complaint, Plaintiff alleges that Dr. Doll and Dr. Agora were deliberately indifferent to his serious medical needs both before and after his alleged

---

[4] In his brief in opposition to the motion to dismiss, Plaintiff asserts that when he was transferred out of the RHU and back to general population, his lower bunk status was restored. (Doc. 12 ¶ 25.)

fall from the top bunk in his RHU cell on January 1, 2012. In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(I) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse*, 182 F.3d at 197. A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 841. "The official must both be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not

state a valid claim of medical mistreatment under the Eighth Amendment . . . ." *Estelle*, 429 U.S. at 106.

Further, when an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty. Corr. Inst'l Inmates*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990); s*ee also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, with respect to medical care Plaintiff received before his alleged fall from the top bunk, Plaintiff alleges that he sent Dr. Doll a request for more pain medication. (Doc. 1-1 ¶ 18.) However, he noted that Dr. Doll was not

working at that time due to the holiday season, and he "would have to wait until she returned to work, so that [he] could ask her about the situation." (*Id*. ¶ 19.) Thereafter, when he submitted a request to Dr. Doll on December 27, 2011 about his top bunk status, she recommended that he sign up for sick call. (Doc. 1-1 at 11.) Plaintiff did not follow Dr. Doll's directive. (*See* Doc. 1-1 ¶ 28.) As to Dr. Agora, Plaintiff alleges that Dr. Agora evaluated him while he was in the RHU, and resultantly reordered Plaintiff's pain medication. (*Id*. ¶¶ 22, 23.) Plaintiff told Dr. Agora that "the pain medication that he was getting was not sufficient enough to help manage the pain." (*Id*. ¶ 24.) Plaintiff also cites a December 29, 2011 request he made to Dr. Agora about why his pain medication had been reordered. (Doc. 1-1 at 12.) In his response, Dr. Agora directed Plaintiff to sign up for sick call, (*id*.), but Plaintiff does not allege that he complied with that directive.

Upon review, these allegations in the complaint, as well as the documentation submitted in support thereof, demonstrate that neither Dr. Doll nor Dr. Agora were deliberately indifferent to Plaintiff's medical needs prior to the alleged fall from the top bunk. Rather, both Defendants provided Plaintiff with medical attention and prescriptions to ease his discomfort. Unfortunately, despite this medical attention, Plaintiff continued to suffer discomfort. Further, it is apparent that both Defendants attempted to respond to Plaintiff's concerns by recommending that Plaintiff sign up

for sick call, but Plaintiff ignored those recommendations. This is clearly a case where Plaintiff has been given medical attention but is dissatisfied with the course of treatment and subsequent results. Because an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference, *see Lanzaro*, 834 F.2d at 346, Plaintiff has failed to establish an Eighth Amendment violation with respect to his medical care before his January 1, 2012 fall from the top bunk as to either Dr. Doll or Dr. Agora. Therefore, Medical Defendants' motion to dismiss will be granted here. Further, since Plaintiff has failed to state a constitutional violation, amendment would be futile. *See Alston*, 363 F.3d at 236.

Second, as to Plaintiff's claims regarding the medical care he received after his alleged fall on January 1, 2012, notably Plaintiff does not allege that Dr. Doll or Dr. Agora evaluated him after that fall, or even that he requested evaluation from either one and they ignored his requests. Rather, Plaintiff alleges he received care from two nurses, neither of whom is a named Defendant. As such, Plaintiff has alleged only that Defendants Dr. Doll and Dr. Agora provided medical care for him *before* his fall. Therefore, because Plaintiff has not alleged any personal involvement by these Defendants in the allegations related to treatment he received after the January 1, 2012 fall, they cannot be held liable, *see Rode*, 845 F.2d at 1207, and Medical Defendants' motion to dismiss will be granted here. Further, since Plaintiff has failed

to state a constitutional violation, amendment would be futile.  *See Alston*, 363 F.3d at 236.

### C.  <u>Supplemental Jurisdiction Over State Law Claim</u>

Plaintiff has also alleged a state law claims of negligence and medical malpractice against Medical Defendants.[5]  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1988) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account

---

[5]  In their motion to dismiss, Medical Defendants argue that the state law claims should be dismissed because Plaintiff has failed to comply with Pennsylvania Rule of Civil Procedure 1042.3, by filing a valid certificate of merit.  (*See* Doc. 6.)  In response to the motion to dismiss, Plaintiff filed a brief in opposition, (Doc. 12), as well as a certificate of merit, (Doc. 13).  Under Rule 1042.3, a certificate of merit must be filed with the complaint or within sixty days after the filing of the complaint.  Plaintiff's certificate of merit was neither timely filed nor in accordance with the requirements Rule 1042.3.  Nevertheless, because the court declines to exercise supplemental jurisdiction in this case, it need not address the timeliness or format of the certificate of merit.

generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state law claims.  *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85.  In this case, since the court is dismissing every claim against Medical Defendants over which it had original subject matter jurisdiction, the court declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV.    Conclusion

For the reasons set forth below, the Medical Defendants' motion to dismiss (Doc. 5) will be granted.  Defendants Corizon Health, Inc., Dr. Doll, and Dr. Agora will be dismissed as parties in this action.

An appropriate order will issue.


S/SYLVIA H. RAMBO
United States District Judge


Dated: February 28, 2013.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER W. DOZIER,** | : | CIVIL NO. 1:CV-12-00838 |
| | : | |
| **Plaintiff** | : | (Judge Rambo) |
| | : | |
| **v.** | : | |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| **COMMISSIONER OF THE** | : | |
| **DEPARTMENT OF** | : | |
| **CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

For the reasons set forth the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) The motion to dismiss (Doc. 5) is **GRANTED**.

2) All Pennsylvania state law claims against Corizon Health, Inc., Dr. Doll, and Dr. Agora are **DISMISSED** without prejudice.

3) Defendants Corizon Health, Inc., Dr. Doll, and Dr. Agora are **DISMISSED** as parties in this action.

S/SYLVIA H. RAMBO
United States District Judge

Dated: February 28, 2013.