# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER W. DOZIER,** | : | CIVIL NO. 1:CV-12-00838 |
| **Plaintiff** | : | (Judge Rambo) |
| v. | : | |
| **DEPARTMENT OF CORRECTIONS, COMMISSIONER OF THE DEPARTMENT OF CORRECTIONS, et al.,** | : | |
| **Defendants** | : | |

## **M E M O R A N D U M**

Plaintiff Roger W. Dozier, a former state inmate currently residing at Garidenizia D.R.C., Inc. in Philadelphia, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983 with a *pro se* complaint on April 4, 2012.[1] (Doc. 1-1, 1-2.) Plaintiff has also asserted pendant state law claims of negligence and medical malpractice. Named as Defendants are Corizon, Inc., and two medical providers ("Medical Defendants")[2] at his former place of confinement, the State Correctional Institution at Smithfield ("SCI-Smithfield") in Huntingdon, Pennsylvania, as well as a number of Department of Corrections ("DOC") employees located at SCI-Smithfield

---

[1] Plaintiff originally filed his complaint in the Court of Common Pleas of Huntingdon County, Pennsylvania. (*See* Doc. 1.) The complaint was removed to this court through a Notice of Removal filed on May 4, 2012. (*See id.*)

[2] The Medical Defendants are as follows: Corizon, Inc., and two employees, Dr. Doll and Dr. Agora. On May 21, 2012, these Defendants filed a motion to dismiss, and by memorandum and order dated February 28, 2013, the motion was granted, (Doc. 17). *See infra*, Section I.B.

("Corrections Defendants").³ In the complaint, Plaintiff alleges that all Defendants were deliberately indifferent to his serious medical needs both before and after he fell from his top bunk on January 1, 2012. As relief, he seeks compensatory damages.

Before the court is a motion to dismiss filed by the remaining Corrections Defendants. (Doc. 22.) For the reasons set forth below, the motion will be granted.

I. **Background**

   A. **Facts**

In his complaint, Plaintiff provides the following factual background with respect to his claims. For purposes of disposition of the instant motion to dismiss, the factual allegations asserted in the complaint will be accepted as true and viewed in a light most favorable to Plaintiff.

In his complaint, Plaintiff alleges that when he arrived at SCI-Smithfield in June or July 2009, he notified a doctor that he required chronic care because he had been in an automobile accident and injured his right shoulder and back, and has been on pain management since the accident. (Doc. 1-1 ¶ 12.) When the doctor asked him why he was assigned to bottom bunk status, Plaintiff responded that he had been shot

---

³ The Corrections Defendants are as follows: Department of Corrections, Commissioner of the Department of Corrections; John Fisher, Warden; R. Sue Hannah, Deputy Warden; and, William Driebelbis, Health Care Adminnistrator.

2

in the knee and had a "blown out bicep." (*Id.*) He also explained that he was on a medical restriction of "no pushing, no pulling, no standing for long periods of time, no bending for long periods of time." (*Id.*) The doctor then told Plaintiff that he would remain on bottom bunk status. (*Id.*)

At some point after this initial screening with the doctor, Plaintiff was placed in the "SMU Segregated Medical Unit" ("SMU") in order to have access to an electrical outlet for his "C-Pap breathing machine." (*Id.*) After forty-five days in the SMU, Plaintiff was transferred to the "A.C. Administrative Custody Side" of the Restricted Housing Unit ("RHU") "under disciplinary sanctions." (*Id.*) Once in the RHU, Plaintiff was assigned a top bunk. (*Id.* ¶ 13.) He did not know who rescinded his bottom bunk status or why the action was taken. (*Id.* ¶¶ 14, 15.) Plaintiff then made an inquiry to Dr. Doll, his chronic care doctor, about why he was assigned to the top bunk and requested more pain medication. (*Id.* ¶ 18.) He alleges that Dr. Doll did not respond because she was not working due to the holiday season. (*Id.* ¶ 19.) However, Plaintiff also submitted a sick call slip to a physician's assistant ("PA") for more pain medication. (*Id.* ¶¶ 20, 21.) The PA responded that he would place Plaintiff on the call list to see the doctor. (*Id.* ¶ 21.)

Thereafter, Plaintiff was examined by Dr. Agora, the doctor attending to the RHU. (*Id.* ¶ 22.) Dr. Agora informed Plaintiff that there was nothing wrong with him

3

that would preclude the use of the top bunk. (*Id*.) Plaintiff continued to complain of pain in his lower back and bicep. (*Id*.) In response, Dr. Agora reordered Plaintiff's pain medication. (*Id*. ¶ 23.) When Plaintiff informed Dr. Agora that the pain medication was not helping him manage the pain, Dr. Agora told him that there was nothing wrong with him and escorted Plaintiff back to his cell. (*Id*. ¶¶ 24, 25.)

On December 27, 2011, Plaintiff submitted a request slip to Dr. Doll complaining of his top bunk status. (*Id*. ¶¶ 26, 27; Doc. 1-1 at 11, Inmate's Request to Staff Member.) In her response dated December 28, 2011, Dr. Doll wrote: "Taking elavil does not automatically give you bottom bunk status. I also notice that you have no sports restrictions. Bottom bunk status requires sports restrictions also. If you think that you qualify for this, you should sign up for sick call." (Doc. 1-1 at 11.) In his complaint, Plaintiff alleges that he "doesn't have five dollars to pay out [presumably for a sick call visit] to get the same answers to the same questions." (Doc. 1-1 ¶ 28.) To that end, Plaintiff does not allege that he followed Dr. Doll's directive to sign up for sick call.

On December 29, 2011, Plaintiff submitted a request slip to Dr. Agora, asking why his bottom bunk status had been rescinded and why his pain medication was reordered. (*Id*. ¶ 29, 30; Doc. 1-1 at 12, Inmate's Request to Staff Member.) In his

4

December 30, 2011 response, Dr. Agora told Plaintiff to sign up for sick call. (Doc. 1-1 at 12.) Plaintiff does not allege that he followed Dr. Agora's directive.

On January 1, 2012, Plaintiff fell off the top bunk in his RHU cell, injuring his neck, lower back and right shoulder. (Doc. 1-1 ¶ 32.) A correctional officer found Plaintiff and called for a nurse. (*Id*. ¶¶ 34-37.) The nurse did an initial assessment at the cell, and then Plaintiff was taken to the medical department for further examination. (*Id*. ¶¶ 35-38.) There were no doctors in the department at the time, only two nurses. (*Id*. ¶¶ 40, 42.) Plaintiff was lifted into a wheelchair and placed in an observation cell. (*Id*. ¶ 42.) He was prescribed Motrin and evaluated in the observation cell for two days. (*Id*. ¶¶ 44, 45.) When he was released from the observation cell and returned to his cell in the RHU, Plaintiff had not been seen by Dr. Doll or Dr. Agora, nor was he taken to an outside hospital. (*Id*. ¶¶ 46-48.) Further, he was still assigned to the top bunk. (*Id*. ¶ 49.) Plaintiff alleges that he was still in "intolerable pain," and was not receiving additional medication to manage the pain. (*Id*.) He submitted a sick call slip to the PA, but has not received any change in his medication or in his bunk status. (*Id*. ¶ 52.)

### B. Procedural History

On May 4, 2012, Medical Defendants filed a notice of removal, informing the court of removal of Plaintiff's complaint from the Court of Common Pleas of Huntingdon County to this court. (Doc. 1.) Thereafter, Medical Defendants filed a motion to dismiss on May 21, 2012. (Doc. 5.) On June 7, 2012, the court directed Plaintiff to file a brief in opposition to the motion to dismiss on or before June 21, 2012. (Doc. 9.) Plaintiff filed his opposition on June 20, 2012, which was accepted by the court on August 10, 2012. (*See* Doc. 12.) Thereafter, on February 28, 2013, the court issued a memorandum and order granting Medical Defendants' motion to dismiss and dismissing those Defendants as parties in this action. (Doc. 17.)

Although Pennsylvania's Attorney General's office originally represented Corrections Defendants, there appears to have been some procedural confusion as to service of the complaint. As a result, the court directed service of the complaint on Corrections Defendants by order dated August 10, 2012. (Doc. 14.) After the court granted them an extension of time to respond, (*see* Doc. 20), Corrections Defendants filed a motion to dismiss on May 9, 2013, (Doc. 22). After the court directed Plaintiff to file a brief in opposition, (*see* Doc. 24), Plaintiff filed his brief on June 24, 2013, (Doc. 25). Thus, the instant motion to dismiss is ripe for disposition.

II.     **Standard of Review**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in the context of Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id*. A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *accord, e.g., Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III. <u>Discussion</u>

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[4] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id*.

In the instant motion to dismiss, Corrections Defendants contend that Plaintiff's complaint should be dismissed because: (1) Plaintiff has failed to state a claim relative to his allegations of deliberate indifference in violation of the Eighth Amendment, and (2) Plaintiff has failed to state a claim relative to his allegations of negligence. The court will address these arguments in turn.

### A. **Deliberate Indifference**

In his complaint, Plaintiff alleges that Corrections Defendants were deliberately indifferent to his serious medical needs both before and after his alleged fall from the

---

[4] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

top bunk in his RHU cell on January 1, 2012.  In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  *See also Rouse*, 182 F.3d at 197.  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Farmer*, 511 U.S. at 841.  "The official must both be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid

12

claim of medical mistreatment under the Eighth Amendment . . . ." *Estelle*, 429 U.S. at 106.

Further, when an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990); s*ee also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, Corrections Defendants first argue that Plaintiff has failed to allege a deliberate indifference claim against the only "medical" official of the four Corrections Defendants, Health Care Administrator William Driebelbis. Specifically,

13

they argue that Plaintiff's claim constitutes nothing more than a simple disagreement between the treatment he was provided and the treatment he wished to receive. In support, they point out that Plaintiff alleges in his complaint that he was prescribed medication while he was in the RHU, (Doc. 1-1 ¶ 12); he was treated and examined by several individuals, including a PA and Dr. Agora, (*Id*. ¶¶ 21, 22); his pain medication was reordered by Dr. Agora, (*Id*. ¶ 23); he was told several times to sign up for sick call, but did not comply with those directives, (*Id*. ¶¶ 12, 28); he was examined in his cell and at the medical department after his fall from the bunk, (*Id*. ¶¶ 34-38); he was provided with a wheelchair and observed for several days in a medical cell following the fall, (*Id*. ¶¶ 42-45); and, he was given medication for his pain following the fall, (*Id*. ¶ 44). Unfortunately, despite all the medical intervention, Plaintiff continued to suffer from discomfort. This is clearly a case where Plaintiff has been given medical attention and is dissatisfied with the course of treatment and subsequent results. As set forth above, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235. Courts will not second guess whether a particular course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997). Moreover, there is nothing in the record demonstrating that any significant delay in treating Plaintiff's medical condition was deliberate or intentional on the part of Defendant Driebelbis.

Therefore, the court agrees with Corrections Defendants that Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs against Defendant Driebelbis. Corrections Defendants' motion to dismiss will be granted as to the claim against Defendant Driebelbis. Further, since Plaintiff has failed to state a constitutional violation, amendment would be futile. *See Alston*, 363 F.3d at 236.

Second, the remaining Corrections Defendants argue that, because the record shows that Plaintiff was being evaluated and treated properly by the medical officials at SCI-Smithfield, there is no factual basis for Plaintiff's assertion of a constitutional violation by the non-medical Corrections Defendants. Indeed, the Third Circuit has recognized a distinction between corrections defendants and health care defendants in the context of claims involving indifference to an inmate's health care concerns. *See, e.g., Donnell v. Corr. Health Servs., Inc.*, 405 F. App'x 617, 622 (3d Cir. 2010). In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Third Circuit Court sustained the dismissal of correctional officer defendants but reversed a dismissal of health care defendants with respect to claims asserting that both types of defendants had been deliberately indifferent to the inmate's medical needs. The Court explained:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison

15

> official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

*Spruill*, 372 F.3d at 236 (emphasis in original). In *Donnell*, the Third Circuit reasoned that, "[w]here, as here, the record suggests that the prison delegated to a private company the responsibility of conducting medical assessments of newly-admitted inmates, it may be that corrections defendants could not have the requisite culpable state of mind, while the health care professionals could be found liable." *Donnell*, 405 F. App'x at 623.

In this case, the remaining Corrections Defendants are the Commissioner of the Department of Corrections, Warden Jon Fisher, and Deputy Warden R. Sue Hanna. None of these Defendants are medical personnel who were treating Plaintiff at the relevant time period. Further, Plaintiff has acknowledged that during the relevant time period, SCI-Smithfield had contracted with Corizon Health, Inc., an independent contractor, for medical services for SCI-Smithfield inmates. (Doc. 1-1 ¶ 8.) The Third Circuit has made clear that a non-physician defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care provider. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Accordingly, Plaintiff has failed to

establish his claim for inadequate medical care against the remaining non-medical Corrections Defendants. Thus, the motion to dismiss will be granted as to these remaining Corrections Defendants. Further, since Plaintiff has failed to state a constitutional violation, amendment would be futile. *See Alston*, 363 F.3d at 236.

### B. Supplemental Jurisdiction Over State Law Claim of Negligence

Plaintiff has also alleged a state law claims of negligence and medical malpractice against Corrections Defendants. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1988) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 42 U.S.C. § 1983 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cnty., Pennsylvania*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the

17

litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state law claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. In this case, since the court is dismissing every claim against Corrections Defendants over which it had original subject matter jurisdiction, the court declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

**IV. Conclusion**

For the reasons set forth below, Corrections Defendants' motion to dismiss (Doc. 22) will be granted. An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated: December 17, 2013.